591 So.2d 977 (1991)
Eugene FASSI and Ann Marie Fassi, Appellants,
v.
STATE of Florida, Appellee.
Nos. 90-914, 90-915.
District Court of Appeal of Florida, Fifth District.
December 12, 1991.
James B. Gibson, Public Defender, and James R. Wulchak, Chief, Appellate Div., Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Nancy Ryan, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Judge.
Appellants appeal their judgments and sentences for arson of a dwelling and burning to defraud an insurer. We reverse because of the trial court's erroneous admission of a handwriting examiner's trial testimony.
The facts show that appellee called an examiner of documents at trial for the purpose *978 of comparing appellant's, Eugene Fassi's, handwriting on two letters to spray painted graffiti on the walls of his burned home. Defense counsel objected to the introduction of the examiner's testimony on the ground that a comparison of spray painted graffiti to handwriting samples was too speculative to place before the jury as scientific evidence and on the ground that the subject matter of the testimony was not beyond the common understanding of the average juror. He further argued that the Florida Department of Law Enforcement had been unable to compare the spray painted graffiti to the handwritten letters. He explained that although FDLE had concluded in its report that there was a "strong probability" that appellant was the draftsman of the graffiti, it had encountered a problem in comparing arm writing to hand and finger movements. The trial court deemed the examiner an expert in the area of questioned documents and permitted him to testify.
The examiner testified that some people maintain the same basic arm and hand movements whether they are writing on paper or with spray paint on the side of a wall. He concluded that this was true of the samples in the present case. He observed that the spray painted graffiti had been executed in a smooth, flowing manner and that it was not splotchy. He testified additionally that the class characteristics of the graffiti and the handwriting samples agreed. He concluded that the letters and the graffiti had been written by the same person.
Appellants contend on appeal that the trial court's admission of the examiner's self-authenticating testimony was erroneous because a comparison of graffiti to handwritten documents has not gained a sufficient indicia of reliability in the field of questioned document comparison to be deemed trustworthy. They contend that the examiner's testimony fails to meet the relevancy standard of admissibility as set forth in Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988), rev. den., 542 So.2d 1332 (Fla. 1989).
In Andrews this court determined that the relevancy test found in the evidence code is "the linchpin of admissibility." Id., 533 So.2d at 846. This test requires that opinion evidence be helpful to the trier of fact and that the danger of prejudice not outweigh the value of the evidence. This court qualified its finding by stating that the proper standard should ensure that "only reliable scientific evidence" be admitted. Id. Relying upon United States v. Downing, 753 F.2d 1224 (3d Cir.), affirmed, 780 F.2d 1017 (1985), it further noted that where scientific expertise does not have an established track record, courts may consider the novelty of the technique, its relationship to established methods of scientific analysis, specialized literature discussing the technique, an expert witness's qualifications and stature and any nonjudicial uses of the technique. Andrews, 533 So.2d at 847.
Appellee contends that the admission of the examiner's testimony comports with those factors set forth by the supreme court in Glendening v. State, 536 So.2d 212 (Fla. 1988), cert. den., 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1988) in which the admission of expert testimony in a sexual abuse case was addressed. Those factors are that (1) the expert opinion must aid the trier of fact; (2) the expert must be qualified as such; (3) the opinion must be applicable to evidence presented at trial; and (4) the danger of unfair prejudice must not outweigh the probative value of the opinion. Appellee concludes by stating that any error deemed to have occurred is harmless because of the absence of a reasonable possibility that the error affected the jury's verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
We agree with appellants that the admission of the examiner's trial testimony was reversible error on the ground that a comparison of spray painted graffiti on a wall to the writing contained in a handwritten letter is too speculative. While the admission of expert testimony is generally within the trial court's discretion, a comparison of such completely different mediums should be viewed skeptically. Because the *979 examiner's testimony was critical to a determination of appellants' guilt or innocence, there is more than a reasonable possibility that the error affected the jury's verdict. DiGuilio.
Appellants raise one additional point which merits discussion. The facts show that appellee charged appellants with arson of a dwelling and burning to defraud an insurer. Appellee later nolle prossed the charges and refiled the same charges. Appellants filed a motion to dismiss on double jeopardy and due process grounds. They alleged in their motion that a jury venire had been empaneled at which time appellee had represented to the court that it was ready to proceed. A lengthy voir dire had followed and a jury had been selected. After the court had recessed for lunch, appellee had nolle prossed all charges because of alleged witness problems. Appellants alleged that appellee had acted in bad faith and that its actions were violative of both the double jeopardy and due process clauses of the United States Constitution. They alleged that they were prejudiced by its actions because they were deprived of their right to be tried by a regularly constituted jury which they had participated in selecting and of which they had approved.
The record shows that at the hearing on appellants' motion to dismiss, the prosecutor admitted that he had said that he was prepared for trial when appellants' case was called. Upon questioning he expressed two reasons for nolle prossing the charges against appellants after the jury had been selected. The first reason is that one of his chief witnesses, an arson expert, James Bowman, was unwell and was not prepared to proceed. The prosecutor said that he had not discovered this fact until a break on the morning of trial. He said that Bowman had driven in from out of town that morning and had not been present when the voir dire proceedings had begun. The second reason the prosecutor said that he had nolle prossed the charges against appellants is that he had received some information at 9:30 p.m. the night before trial which he had not had time to review. He explained that the information provided to him consisted of transcripts of appellants' statements taken at the Fire Prevention Office.
Defense counsel argued in response that on the day of trial, the prosecutor had informed him, during a hearing in chambers, of the statements which he had received the night before but had failed to indicate that there was a problem at the time. He argued that the prosecutor had been aware of this information before the jury had been selected. Regarding Bowman, he argued that the parties had allotted three days for trial and that the prosecutor would not have had time to question all of his witnesses during the first day. He argued additionally that there was no evidence from Bowman himself that he had been sick on the day of trial. He argued further that Bowman's testimony was merely cumulative of the testimony provided by another witness testifying for appellee. He argued finally that the prosecutor could have moved for a continuance of the proceedings rather than aborting the entire trial. He concluded his argument by saying that the prosecutor's bad faith actions had violated appellants' double jeopardy and due process rights. He requested that the original jury be repaneled to hear the case if his motion to dismiss was denied.
The prosecutor argued in response that jeopardy does not attach until a jury is empaneled and sworn. He argued additionally that appellee's right to nolle pros the charges against a defendant are within its discretion. The trial court denied appellants' motion to dismiss finding that defense counsel's due process argument was not controlling and that the state had an absolute right to nolle pros the charges against appellants before the jury had been sworn. The court had no objection to the original jury being repaneled if it was still capable of being fair and impartial. The record does not indicate whether the original jury was repaneled in the present case.
Appellants contend on appeal that appellee's bad faith conduct of dismissing the charges against them after a jury had been carefully selected but not yet sworn and then refiling the same charges is violative of both their constitutional guaranty *980 against double jeopardy and their right to due process under the fifth and fourteenth amendments. They contend that appellee should have sought a delay before jury selection or should have sought a delay during trial rather than announcing that it was ready to proceed to trial when it was not.
Appellants recognize that jeopardy does not ordinarily attach until a jury is empaneled and sworn. See Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); Brown v. State, 367 So.2d 616 (Fla. 1979). They contend, however, that appellee's conduct of indiscriminately avoiding and delaying the trial to gain an additional advantage at their expense implicated the underlying policies of the constitutional guaranty against double jeopardy. As stated in Crist, these policies are:
that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Id., 98 S.Ct. at 2160.
Appellants rely primarily upon Koenig v. State, 497 So.2d 875 (Fla. 3d DCA 1986) in support of their argument. Although that case is factually dissimilar, the court's analysis is noteworthy. In that case the district court affirmed the defendant's conviction for charges related to a shooting despite his objection that he was unduly prejudiced by the trial court's dismissal of the initial jury pool before it had been sworn because of the court's determination that it did not represent a cross section of the community. The evidence in that case showed that the defendant was white and that the victim was black. The defendant had exercised his peremptory challenges against all black members of the pool of prospective jurors who were likely to be called.
In its initial decision the district court determined that the defendant had waived any double jeopardy claim. It granted rehearing, however, because of the supreme court's decision in State v. Johnson, 483 So.2d 420 (Fla. 1986), rendered several days after its own decision, holding that a defendant's failure to raise a double jeopardy claim is not a waiver of the claim.
The district court affirmed its initial decision on rehearing finding that the trial court's actions in dismissing the initial jury pool had not implicated the constitutional guaranty against double jeopardy. The court premised its holding upon the fact that there was no evidence that the trial court's actions were motivated by bad faith or a desire to aid the state or harm the defendant. Significantly, however, the court stated:
Moreover, were there evidence that the proceedings were terminated in such bad faith, the argument that double jeopardy should bar further proceedings whether or not the jury was sworn, or the argument that further proceedings would violate the defendant's due process rights might very well succeed.
Koenig, 497 So.2d at 882. In a specially concurring opinion, Judge Schwartz further stated in a footnote:
If, however, the trial court discharges the unsworn jury in bad faith and the policies behind the double jeopardy clause are implicated, as, for example, where the aborted voir dire particularly has revealed the intended defense to the advantage of the prosecution, or further delay of the trial will aid the prosecution, double jeopardy may preclude further proceedings.
Id., 497 So.2d at 883.
Judge Schwartz further recognized that a defendant's "valued right to have his trial completed by a particular tribunal" now falls within the protection afforded by the constitutional guaranty against double jeopardy. Acknowledging persuasive authority which suggests that this right could potentially mature at a point before the swearing of the jury, even as early as jury selection, he observed that this view had *981 never been applied. He found that courts instead, if for no other reason than ease of administration, had consistently adhered to the bright line rule that jeopardy attaches upon the swearing of a jury.
Despite the majority's failure to find that the defendant's double jeopardy rights had been violated, Judge Schwartz opined that the trial court's conduct might have deprived him of his due process rights under the fifth and the fourteenth amendments. Citing the defendant's failure to raise the issue below or an appeal, however, Judge Schwartz deemed it unnecessary to address the issue in his concurrence. Because of its "availability and merit," he concluded by saying that the court's affirmance was without prejudice to the defendant's later assertion of that claim in a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.
We agree with Judge Schwartz's reasoning that under certain circumstances, a defendant's right to obtain a chosen jury may be infringed upon by the state's bad faith conduct whether the selected jury is discharged before or after it has been sworn. We recognize that the decision to nolle pros is within the state's discretion and that a nolle pros may be filed any time before the jury has been sworn or evidence has been presented. See State v. M.J.B., 576 So.2d 966 (Fla. 5th DCA 1991). This is not to say, however, that the state has unbridled discretion. We are additionally cognizant of the fact that jeopardy ordinarily does not attach until a jury is empaneled and sworn. Crist. It is our conclusion that the circumstances in the present case are insufficient to create an exception to the bright line rule.
Although appellee's conduct in this case was questionable, we are unable to conclude from the record before us that it was motivated by bad faith. Appellants' position on this point is weaknened by their failure to include the voir dire proceedings in the record on appeal. Finally, we recognize that their argument has specifically been rejected by other courts in similar contexts. See Lomax v. Armontrout, 923 F.2d 574 (8th Cir.1991), cert. den., ___ U.S. ___, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991); Durham v. Wyrick, 545 F.2d 41 (8th Cir.1976); Sheffield v. Curran, 645 F. Supp. 859 (D.Mass. 1986); State v. Lomax, 712 S.W.2d 698 Mo. Ct. App. 1986), cert. den., ___ U.S. ___, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991).
REVERSED and REMANDED for new trial.
GOSHORN, C.J., and W. SHARP, J., concur.