696 So.2d 940 (1997)
STATE of Florida, Appellant,
v.
Edmond L. GOODMAN, Appellee.
No. 96-2916.
District Court of Appeal of Florida, Fourth District.
July 9, 1997.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellee.
FARMER, Judge.
Defendant, an African-American male, was on trial for battery of a law enforcement officer and other charges. The state attempted to exercise a peremptory challenge against an African-American juror, but the trial judge disallowed the challenge after a Neil hearing was held. After the jury was selected, but before they were sworn, the state "nolle prossed" the case. Only 30 minutes later, the state refiled the charges. Defendant moved to dismiss, alleging that the state's decision to dismiss and refile the charges was for the purpose of avoiding the jury selected in the prior trial, in violation of defendant's due process rights and the prohibition against double jeopardy. The trial judge granted the motion on both grounds, and this appeal follows.
Only two cases in Florida address the issue presented in this caseKoenig v. State, 497 So.2d 875 (Fla. 3d DCA 1986), and Fassi v. State, 591 So.2d 977 (Fla. 5th DCA 1991). Both parties find in them support for their respective positions. In Koenig, the trial judge decided to discharge the entire jury, before swearing them, in the stated hope of seating a jury more representative of the community. The defendant was later convicted by an all-white jury and appealed on double jeopardy and due process grounds. With respect to the first ground, the court concluded that, because jeopardy attaches only when the jury is sworn, the dismissal before swearing the jury removed any possible double jeopardy violation. On the due process argument, the court found no evidence *941 that the judge's actions affected the defendant's right to exercise his peremptory challenges, despite the fact that those actions were clearly unauthorized. The court thus affirmed the conviction.
Judge Schwartz concurred in the conclusion that no double jeopardy violation had occurred, but then stated:
"I add the observation that this conclusion may not mean that the defendant is wholly without constitutional remedy. Almost without question, Koenig was deliberately deprived of a recognized, protectable, `valued' right to be tried by a regularly constituted jury in whose selection he had participated and the composition of which he obviously approved. See Crist [v. Bretz ], 437 U.S. 28, 37, 98 S.Ct. 2156, 2166, 57 L.Ed.2d 24, (1978) .... [c.o.] Particularly since, as is also self-evident, the reason that this occurred was based solely upon the perceived undesirability of the jury itself, thus implicating and contravening the very reason for the existence of the right, the trial court's action may have deprived the appellant of his generalized fifth and fourteenth amendment rights to due process. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (although sixth amendment right to speedy trial does not arise until arrest or formal accusation, pre-arrest delay may constitute due process violation if actuated by constitutionally impermissible purpose); United States v. Gouveia, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (same). See generally Parratt v. Taylor, 451 U.S. 527, 547-48, nn. 2-5, 101 S.Ct. 1908, 1919-20, nn. 2-5, 68 L.Ed.2d 420, 436-37 nn. 2-5 (1981) (Powell, J., concurring) (collecting cases in which intent of state officials is deemed pertinent in determining whether various constitutional rights and privileges have been abridged). Since no due process claim has ever been asserted either below or here, I do not and I agree that the court should not directly address the very difficult issues raised by such a contention. Because of its possible availability and merit, however, I note that our affirmance is necessarily without prejudice to a later assertion of that claim in an appropriate motion under Florida Rule of Criminal Procedure 3.850 or otherwise."
497 So.2d at 884-85.
In Fassi, the fifth district considered the same issue. A jury had been impaneled after a lengthy voir dire process, and then a luncheon break was held. Upon returning from lunch, the state nolle prossed all charges and immediately refiled them. The asserted reasons were witness problems and new information just received on the eve of trial. The defendant moved to dismiss the charges, arguing that the state acted in bad faith. The district court affirmed the denial of the motion to dismiss, explaining that:
"We agree with Judge Schwartz's reasoning that under certain circumstances, a defendant's right to obtain a chosen jury may be infringed upon by the state's bad faith conduct whether the selected jury is discharged before or after it has been sworn. We recognize that the decision to nolle pros is within the state's discretion and that a nolle pros may be filed any time before the jury has been sworn or evidence has been presented. [c.o.] This is not to say, however, that the state has unbridled discretion. We are additionally cognizant of the fact that jeopardy ordinarily does not attach until a jury is empaneled and sworn. We recognize that the decision to nolle pros is within the state's discretion and that a nolle pros may be filed any time before the jury has been sworn or evidence has been presented. [c.o.] It is our conclusion that the circumstances in the present case are insufficient to create an exception to the bright line rule.
"Although appellee's conduct in this case was questionable, we are unable to conclude from the record before us that it was motivated by bad faith.
591 So.2d at 981.
In this case, the state attorney gave no particular reason for her decision to nolle pros immediately prior to the initial trial, either at that time or at the later hearing on the motion to dismiss. In fact, at the hearing on the motion to dismiss, the prosecutor simply stated that she did not believe there was enough evidence in the record for a *942 finding of bad faith. She did note, however, that after the adverse Neil ruling during jury selection, she allowed a second black juror with no challenge. The trial judge explained his decision to dismiss the case as follows:
"[T]he facts in this case indicateI'm not indicating that what's happened is that the State's utilized the system of nolle pros to attempt to get a jury to their satisfaction rather than the rulings of the Court. I think the Statethe defense argument's got merit. And my ruling is certainly subject to review....
"I am ruling that from the facts presented in this casethis case was called for trial, I announced to the jury clerk that, I believe we spent two or three hours in the selection process; I believe during the selection process there was an Afro AmericanI realize there was onethe State exercised or attempted to exercise a peremptory challenge. The Court, upon the request of the defense counsel, conducted a hearing to determine whether or not there was any basis to that, other than being racially motivated. The Court conducted that hearing and determined that the basis that, the Court felt, that the peremptory challenge was for that purpose, and therefore denied the State of Florida the right of the peremptory challenge, which left the State of Florida with that additional juror. The jurors, as I understand it, wereI believe they wereaccepted; I usually ask them were they accepted, yes, yes. I believe we asked the jurors to come in and be seated in the jury box, and I was just about, and I believe I made a statement we can replay the transcriptthat I would swear the jury, I would give the jurors preliminary statements and that we would hold a, we would have a, opening statements the following morning. Just about the time the clerk is to go over to administer the oath, the State of Florida indicated they were nolle prossing the case. It was certainly a surprise to the Court after we'd spent the day, or the afternoon. And then... the State filed an amended information. I draw from the conclusionI'm not trying to say any bad faithwhat I'm drawing from the conclusion is that the State of Florida used the nolle pros for the purpose of avoiding the particular jury that was, I believe, had been originally selected in the afternoon. My rulings are certainly subject to appeal but I think under these circumstances, based on the facts, motion to dismiss will be granted." [e.s.]
We read this explanation to find that the state nol prossed only to avoid the trial court's Neil-Slappy ruling against it.
In light of the judge's factual findings, and his specific finding that there was no bad faith on the part of the prosecutor, the state now argues that reversal of the order granting defendant's motion to dismiss is mandated under Koenig and Fassi. We distinguish both cases, however, from the present one. In Koenig the discharge of the first jury occurred because of the trial judge's erroneous, however well-intentioned, attempt to achieve a kind of racial balance on the jury. In Fassi, the trial court apparently believed that the prosecutor's nol pros was based on permissible tactical reasons, the unavailability of a witness and the acquisition of recent information.
Although defendant argues that we should affirm simply because the state does not explicitly address the issue of a due process violation, it seems clear to us that the primary basis for the state's appeal is the trial court's finding of no bad faith. In other words, the state argues that the court could not dismiss the refiled charges on account of a constitutional violation unless it found that the state acted in bad faith.[1]
We disagree with the state that a finding of bad faith was indispensable. It is clear to us that the trial court found that the nol pros was done solely to avoid the jury just selected, and that the jury just selected included a member whom the state had sought to excuse peremptorily in violation of the rule against invidious racial discrimination in the exercise of peremptory challenges. We conclude *943 that it is a denial of due process for the state to nol pros in order to avoid having a jury so constituted.
We strongly disapprove of the state's improper use of peremptory challenges to strike a prospective juror on account of the juror's race. Equally, however, we condemn the state's petulant refusal to try its case to a jury containing a member whom it had improperly sought to strike. Just as the state may not use its discretion to peremptorily strike prospective jurors because of their race, so also it may not use its discretion to nol pros to achieve the same end. While the trial court may not have found in this effort bad faith by the prosecutor, we have no trouble in finding a violation of due process. Allowing the state to proceed in this way would have the intolerable effect of permitting the state to avoid the Neil-Slappy holdings by simply nol prossing when its invidiously discriminatory purpose is found out.
AFFIRMED.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] We agree with both Koenig and Fassi that, because the jury was not sworn, there is no double jeopardy violation. Defendant argues that the court's ruling was tantamount to a finding of bad faith, whatever the label placed on it, and thus there is a due process violation.