NO. 07-08-0007-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 29, 2009
_____

JAMES LEON WILLIAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 40TH DISTRICT COURT OF ELLIS COUNTY;

NO. 30467CR; HONORABLE RICHARD DAVIS, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, James Leon Williams, was charged by indictment with two counts of criminally negligent homicide. Appellant was convicted by a jury and sentenced to seven years imprisonment, however, the term of confinement was suspended and appellant was placed on community supervision for a period of seven years. Appellant appeals the judgment of the trial court claiming a violation of the due process clause of the United States Constitution and a violation of the due course of law provision of the Texas Constitution. We affirm.

Factual and Procedural Background

Appellant is not claiming error in the ultimate trial of his case, instead he is claiming that the charges against him should have been dismissed before he stood trial because of violation of both his United States and Texas constitutional rights.  For these reasons we will only address those procedural facts that are relevant to our determination of the issues.

On November 6, 2006, a jury was selected to try appellant's case.  That jury was seated but not sworn.  The selected jury was instructed to return for the trial of appellant's case on November 14, 2006.  Upon arrival for trial, appellant was notified that two of the jurors had become ill and were unable to continue.  After appellant was unable to agree to two substitute jurors from the jury list, the panel was dismissed and the matter was, subsequently, rescheduled for jury selection on January 9, 2007, with trial to commence later in January.[1]  The second voir dire was conducted on January 9, 2007, and a jury was again selected but not sworn.

During the appellant's portion of voir dire, there were numerous confrontations between the trial judge and appellant's trial counsel.  As an example, at the beginning of appellant's voir dire, trial counsel began giving a recitation about his background and family when the trial judge stated "No biographies." Trial counsel reacted with the statement, "But

[1]The record is unclear when the trial was to have commenced.  A notation on the Clerk's list of jurors chosen indicates that trial was scheduled to begin January 29, 2007.  During the trial court's preliminary statements to the jury panel, the trial judge advised the case would be tried the 22nd or 23rd of January, 2007.

it's my time, Judge." The trial judge retorted, "No biographies. I'm glad you won the war."

Later in the voir dire, trial counsel was discussing a fact pattern with a prospective juror and, after the juror had stated that he would consider the fact pattern an accident, the trial judge made the following comment without the State interposing an objection,

> And that's not what it is. It's criminal negligent homicide. If you find that it was committed it was criminal negligence–criminally negligent homicide. It's not considered a, quote, accident.

After the trial judge's comment, trial counsel stated, "And if you don't think they proved it beyond a reasonable doubt it's called an acquittal." The trial court remarked, "There you go, Mr. Finn. Now you're on." Trial counsel stated, "Thank you," to which the trial judge commented, "If you want to get into it, we can get into it." The trial judge's concluding comment in this portion of the voir dire was, "All right. That's fine. Let's see who wins." Ultimately, the jury was selected and the trial was recessed to a later date.

Prior to reconvening for trial, the trial judge sent a letter, on January 11, 2007, advising counsel that the jury selected but not sworn on January 9, 2007, was dismissed and that a new trial date had been set. On January 16, 2007, appellant's trial counsel filed a request for the entry of findings of fact and conclusions of law regarding the court's reasons for discharging the selected but not sworn jury. That same day, trial counsel also filed a motion requesting a hearing prior to the discharge or dismissal of the selected but not sworn jury. Also filed on January 16, 2007, was a motion to recuse/disqualify the trial judge. The trial judge refused to recuse and the matter was referred to the Administrative Judge for the 1st Administrative Region for assignment of a judge to hear the motion to

recuse. A hearing on the motion to recuse was conducted on February 22, 2007, and an order of recusal was entered by the visiting judge on February 27, 2007, with a different visiting judge being assigned to try appellant's case.

On July 5, 2007, the assigned visiting judge heard appellant's motion to dismiss the indictment against him. The motion alleged the same grounds as alleged on appeal. The visiting judge overruled the motion. Trial was subsequently conducted on October 29, 2007, and a verdict of guilty was returned on October 31, 2007. After the jury's verdict, the visiting judge assessed appellant's sentence at seven years imprisonment on each of the two counts, with the term of confinement suspended on each count and placed appellant on community supervision for a period of seven years. It is from this judgment that appellant appeals.

Through two issues, appellant contends that the *sua sponte* action of the trial court in dismissing the chosen but not sworn jury violated his constitutional rights. Specifically, appellant contends: 1) the dismissal of the selected jury violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and 2) the dismissal of the selected jury violated his constitutional right to due course of law under Article I, section 19 of the Texas Constitution. We disagree and affirm the judgment.

Due Process and Due Course of Law Claims

The relevant facts leading up to the dismissal of the chosen but unsworn jury are relatively uncontested. The trial judge and trial counsel engaged in a pattern of conflict that, according to the members of the jury panel who testified at the recusal hearing, could

4

be labeled as exhibiting animus toward trial counsel. Rather than a question of the nature of the exchanges between the trial judge and trial counsel, the real questions are what does the record reveal as the reason for the discharge of the unsworn jury and how must we gauge the action of the trial judge in discharging the jury when the trial judge gave no reason for the discharge of the selected but unsworn jury. We are left to review the record in an attempt to ascertain what led to the trial court's dismissal of the jury.

Since the jury chosen was not sworn, jeopardy had not yet attached. See Downum v. United States, 372 U.S. 734, 83 S.Ct 1033, 10 L.Ed.2d 100 (1963) (concluding that, for purposes of the Fifth Amendment, jeopardy attaches when the jury is sworn); see also Proctor v. State, 841 S.W.2d 1, 4 (Tex.Crim.App. 1992) (concluding that for purposes of the federal constitution and the state constitution, jeopardy attaches at the time the jury is sworn). Because jeopardy had not attached at the time the trial judge dismissed the jury, appellant is left to claim harm through a denial of due process for purposes of his federal constitution claim and denial of due course of law for purposes of his state constitutional claim.

Appellant contends that for purposes of analysis, we must view the action of dismissing the chosen but unsworn jury as a denial of due process and due course of law without regard to an inquiry into bad faith on the part of the trial judge. Appellant's contention is based upon what he describes as "his valued right to have the trial completed by a particular tribunal." See Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Additionally, appellant contends that, by finding a due process and due course of law violation, we will recognize the impropriety of the trial judge's actions. Finally,

5

appellant contends that sustaining the trial judge's actions would eviscerate the holding of Batson v. Kentucky for it would allow judges to dismiss jury panels chosen but not sworn or prosecutors to dismiss indictments without prejudice after a jury has been chosen but not sworn in order to affect the racial composition of juries. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1989).

We decline appellant's invitation to assume bad faith on the part of the trial judge. We do so for two reasons. First, the record reveals that the trial judge habitually selects a number of juries at one time. In all cases, unless trial is starting immediately, the selected jurors are excused to come back on the appointed day for trial. It is at that time that the jurors are sworn. Accordingly, the facts do not sustain appellant's contention that, by not swearing the jury in after they were selected, the trial court must have had some nefarious plan in mind. Further, the record reveals that the members of the jury panel who testified at the recusal hearing all felt that the trial judge had been rude or arrogant with trial counsel. The consensus of opinion amongst those witnesses was that appellant might not get a fair trial if trial counsel continued to represent him in front of the trial judge. This testimony is consistent with the State's position that the trial court dismissed the selected but unsworn jury because the trial judge realized that he had overstepped the bounds of proper judicial conduct during the voir dire. Secondly, we note that the United States Supreme Court has been reluctant to presume vindictiveness against defendants when allegations of due process violations occur before the conclusion of trial. See United States v. Goodwin, 457 U.S. 368, 369, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (deciding whether to apply a presumption of bad faith, previously used to evaluate a judicial or

6

prosecutorial response to defendant's exercise of a right to retrial, to evaluate a prosecutor's pretrial response to defendant's demand for a jury trial). Therefore, we will not apply a presumption of bad faith or vindictiveness against the trial judge in this matter.

If we do not presume bad faith or vindictiveness, then upon what basis may we grant appellant the relief he requests? Appellant claims we should base our decision on his valued right to have the trial completed by this particular tribunal. Wade, 336 U.S. at 689. We note, as did Justice Powell in his dissent in Crist v. Bretz that Wade asserts that right without benefit of any analysis or reference to other authority for the alleged right. See Crist v. Bretz, 437 U.S. 28, 53, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). We must then conclude that, without a presumption of bad faith or vindictiveness, appellant does not have a right to a trial in front of a particular jury. See Goodwin, 457 U.S. at 384.

Additionally, while discussing remedial actions by courts in the due process arena, Justice Marshall in United States v. Lovasco urged caution by stating,

> But the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function."

United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (concerning dismissing an indictment because the prosecutor delayed the initiation of prosecution). Rather than counsel caution in interposing judicial action, appellant would have us assume that failure to recognize his due process claim would lead to an

7

evisceration of <u>Batson v. Kentucky</u>.  The problem with that assumption is that if a proper

<u>Batson</u> objection has been made then the record of trial would allow an appellate court to

rule accordingly without the necessity of assuming bad faith or vindictiveness of anyone.

Appellant has also cited this court to two cases out of Florida to support his due

process argument.  However, on close reading, neither case is applicable to the facts at

bar.  In <u>State v.Goodman</u>, 696 So.2d 940 (Fla. Dist. Ct. App.–4th 1997), the prosecutor

took a *nolle pross*  on a case shortly after the trial court ruled that the State's action in

exercising a peremptory challenge against a minority violated Florida's version of a <u>Batson</u>

challenge.  The trial court did not find that the State acted in bad faith, yet the trial court

dismissed the case upon the defendant's motion.  The appellate court held that a finding

of bad faith was not necessary, however, the language used by the appellate court was

such as to imply improper motive.  The appellate court stated,

> We strongly disapprove of the state's improper use of peremptory challenges
> to strike a prospective juror on account of the juror's race.  Equally, however,
> we condemn the state's petulant refusal to try its case to a jury containing a
> member whom it had improperly sought to strike.

<u>Id</u>. at 943.  The opinion clearly indicates that the State was guilty of wrongdoing in taking

a *nulle pross* after obtaining an adverse ruling that their previous actions were illegal.  In

light of the language used by the appellate court, the fact that they did not overrule the trial

court's finding on no bad faith cannot be read to dispense with some sort of requirement

of bad faith or vindictiveness on the part of the prosecutor.  Such element is totally missing

from the facts of the case at bar.  The other Florida case cited by appellant, <u>Koenig v.</u>

<u>State</u>, 497 So.2d 875, 884 (Fla. Dist. Ct. App.–3rd 1986), is cited for the proposition that,

8

even though the defendant did not urge a due process violation, had he done so it might very well have succeeded. The portion quoted by appellant was in a concurring opinion and is, at best, dicta. Subsequent to the Florida opinions referred to by appellant is the Florida case of State v. Hurd which concluded that the validity of the defendant's alleged due process violation depended upon whether the State's action was motivated by an improper purpose. State v. Hurd, 739 So.2d 1226, 1228 (Fla. Dist. Ct. App.– 2nd 1999). It would, therefore, appear that some sort of showing of improper motive or bad faith is required in Florida before an alleged due process violation of the sort alleged here could be found.

Based upon our reading of the cases, it is our determination that some type of improper motive or bad faith must be attributable to the trial judge before we would be authorized to find a violation of appellant's due process rights under the fact scenario we are presented. The record in this case simply does not support that type of finding. Accordingly, we hold that the trial court did not violate appellant's due process rights under the United States Constitution.

Appellant has also contended that the trial court's action violated his due course of law rights under the Texas Constitution. Yet, appellant has not cited this court to a single case that discusses the due course of law rights of a criminal defendant in the context of an action by the trial court, or even prosecutor, prior to jeopardy attaching. Likewise, there are no citations to authority for the proposition that a violation of a due course of law right of a criminally accused can occur without any necessity of improper motive or bad faith. We are simply asked to assume bad faith on the part of the judge and to further assume

9

that if we do not reverse the judgment of the trial court and order the indictments dismissed we will be setting the stage for judges to feel free to dismiss jury panels simply because a panel might be perceived as more favorable to one party than the other. These are assumptions that we cannot make. While it is true that courts in Texas have held that the due course of law guarantee of the Texas Constitution may offer broader protection than the due process guarantees of the United States Constitution, see Wright v. State, 640 S.W.2d 265, 269 n.12 (Tex.Crim.App. 1982), we have found nothing to indicate that Texas would dispatch with a showing of bad faith or improper motive on the part of the trial judge. In Texas, trial courts have broad discretion over jury selection. See Wright v. State, 28 S.W.3d 526, 533 (Tex.Crim.App. 2000). We do not feel the necessity to interfere with that discretion. Appellant's issue regarding a violation of his due course of law rights is overruled.

Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Publish.