

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00234-CR

**OLUWAKOREDE OLAYE BABALOLA,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

**From the 361st District Court
Brazos County, Texas
Trial Court No. 08-00363-CRF-361**

## MEMORANDUM  OPINION

Oluwakorede Babalola[1] was charged with two counts of aggravated robbery. TEX. PENAL CODE ANN. 29.03 (Vernon 2003).   The jury convicted Babalola in Count 1 and assessed his punishment at five years confinement.  The jury convicted Babalola in Count 2 and assessed his punishment at ten years confinement.  In Count 2, the trial court suspended imposition of the sentence and placed Babalola on community supervision for five years.

---

[1] Oluwakorede Babalola is also known as Yemi Babalola.

# Background Facts

Jeffrey Smith and Nosa Ojo were roommates at an apartment complex in College Station, Texas. On November 29, 2007, Ryan Weatherford was at the apartment. Jeff asked Ryan and Nosa to stay at the apartment because someone was coming over. There was a knock at the door, and Jeff answered it. Jeff was hit in the head and fell to the floor. Two very large men came into the apartment. Both men were wearing hoodies and bandanas, and one of the men had a gun.

Nosa ran upstairs and was able to escape out of a window. The men put duct tape around Jeff and Ryan's arms and taped their arms behind their backs. The men took marijuana from the apartment. After an investigation, Babalola was arrested for the offense.

# Dismissal of Jury

In his first and second issues on appeal, Babalola complains that the trial court erred in dismissing the selected jury. Babalola complains that the dismissal violated his due process rights under both the United States and Texas Constitutions.

## Facts

Jury selection began on March 30, 2009. The State questioned potential jurors on whether they know Babalola or his family, and some potential jurors indicated that they know them. The trial court heard challenges for cause from both the State and Babalola. The State challenged potential jurors for cause based upon their relationship with Babalola and his family.

Twelve jurors and one alternate were chosen to serve as the jury. The jury was recessed for the day without being sworn in by the trial court. The following morning, the State informed the trial court that Babalola's parents were "mingling" with potential jurors during the jury selection process. Although there is some dispute about when the State became aware of the interaction, the State explained that it learned the details of the interaction that morning from staff members. The trial court held a hearing to consider the matter.

At the hearing, the State presented witnesses who observed Babalola's parents "mingling" with potential jurors. The witnesses testified at the hearing that Babalola's parents were observed throughout the day interacting with the jury pool. Babalola's parents were seen engaging members of the jury panel in conversation on several occasions. Babalola's mother was seated next to a potential juror having a conversation. Babalola's father shook hands with members of the jury panel and interacted with potential jurors. The interaction between Babalola's parents and the jury members occurred in view of the entire jury panel.

Babalola's mother testified at the hearing that she sat beside a potential juror who teaches at the same school as she does. Babalola's mother stated that she did not talk about the case with the potential juror. Babalola's mother testified that she talked to another potential juror about each other's families. Babalola's father testified at the hearing that he spoke to two potential jurors. He discussed family with one of the potential jurors, and the other knew him from his work as a pastor.

The State asked the trial court to dismiss the panel. Babalola argued that dismissing the jury would deny him his right to a fair trial and that the State was seeking to dismiss the jury in bad faith because the State was unhappy with the selected jury. The trial court dismissed the jury panel "because of possible negative influence with potential jurors."

After the jury panel was dismissed, the trial court heard testimony from Joyce Tippitt. Tippitt's husband was selected to serve on the jury that was dismissed. Tippitt stated that she observed Babalola's mother in the hallway during jury selection. Babalola's mother approached Tippitt and said that her son is the one on trial, and that "it's really bad." Tippitt said that Babalola's mother spoke with members of the jury panel throughout the day. Tippitt also observed a member of the jury panel buy Babalola's mother a soda.

**Due Process and Due Course of Law**

Babalola argued at the hearing that dismissing the jury would place him in double jeopardy. Because the jury was chosen, but not sworn, jeopardy had not attached. *Williams v. State*, 290 S.W.3d 473, 476 (Tex. App.—Amarillo 2009, no pet.).

Babalola argues that he had both a due process and due course of law right to be tried by the jury selected. Babalola does not argue that the trial court acted in bad faith, and we will not presume bad faith against the trial court. *See Williams v. State*, 290 S.W.3d at 476. In the absence of bad faith or vindictiveness, a defendant does not have a right to a trial in front of a particular jury. *See Williams v. State*, 290 S.W.3d at 477.

The record does not support Babalola's argument that he was denied a fair trial. The trial court heard testimony of the interaction between Babalola's parents and potential jurors. The interaction occurred in the presence of the entire jury panel. We do not find that the trial court erred in dismissing the jury panel. Babalola was not denied due process under the Fourteenth Amendment of the United States Constitution.

Babalola does not argue that Article I Sections 13 and 19 of the Texas Constitution provide greater protection than the United States Constitution. We do not find that Babalola was denied due course of law under the Texas Constitution. We overrule Babalola's first and second issues on appeal.

## Motion to Suppress

Babalola complains in his third, fourth, and fifth issues on appeal that the trial court erred in denying his motion to suppress.

### Facts

Officer David Fallwell, with the College Station Police Department, was assigned to investigate the case, and Babalola was identified as a suspect. Officer Fallwell obtained a warrant to search Babalola's residence. On the day the search warrant was executed, the police department set up surveillance on Babalola. As the officers were preparing to execute the warrant, Officer Billy Couch initiated a "traffic stop" of Babalola as he was turning into the entrance of his apartment complex. Officer Couch did not observe Babalola commit a traffic violation, but stopped him for officer safety as the search warrant was being executed.

Officer Couch informed Babalola that he was not free to leave and that Officer Fallwell would be there soon to talk to him. Officer Fallwell arrived approximately ten minutes after Babalola was stopped. Officer Fallwell informed Babalola that he was not under arrest. Officer Fallwell asked Babalola his whereabouts on the date of the offense. Officer Fallwell testified that Babalola was evasive in his answers and that he appeared extremely nervous.

Officer Fallwell recorded his conversation with Babalola, and the transcript from that recording was admitted as evidence. Officer Fallwell told Babalola that there had been an aggravated robbery at the Callaway Villas apartment complex, and he asked Babalola what he knew about the incident. Babalola admitted that he had talked to Jeff about getting some "purple." Babalola said that he and another man went to Jeff's apartment, but left when they saw someone jumping out of the window. Babalola said that he was going over there to buy some "purple" and that he did not want to get in trouble. Officer Fallwell again told Babalola that he was not under arrest. He explained that they just want "to get to the bottom of this and get this cleared up."

Babalola later admitted that he "went in there" but that he "didn't do anything." Babalola then stated "just send me to jail, because my career's over. Everything's over." Officer Fallwell again told Babalola that he was not under arrest. Officer Fallwell said he just wanted to find out the truth. Babalola said that he ran inside of the apartment, but that was it. He did not have a gun. Babalola said that "Somebody got punched and that was it." Babalola said that nothing was taken. Babalola further stated "I'm already in trouble, I'll just take all the rap. I don't need to get someone else in trouble."

Officer Fallwell read Babalola the *Miranda*[2] warnings at that time. Babalola then continued to make statements that his career was over, that he would be kicked out of school, and that it is all over. Babalola repeatedly told Officer Fallwell to take him to jail. Officer Fallwell said that he just wanted to hear what happened from Babalola. Babalola stated "No, because I'm going to jail regardless, so just let me talk to a lawyer or whatever and just let me go to jail, man. … I don't want to snitch on nobody."

Officer Fallwell again asked Babalola to just explain what happened. Babalola continued to ask Officer Fallwell to take him to jail. Babalola later stated that he did not go inside of the apartment.

Officer Fallwell left the scene to prepare arrest warrants. At Babalola's request, officers took him to his residence. During that time, officers found a usable quantity of marijuana. Babalola was placed under arrest for possession of marijuana and taken to jail. While Babalola was in jail, Officer Fuller obtained the arrest warrants for aggravated robbery. Officer Fuller went to Babalola's cell to let him know that he was being charged with two counts of aggravated robbery. Babalola began making statements to Officer Fuller, and Officer Fuller advised Babalola of his rights.

**Standard of Review**

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced

---

[2] *Miranda v Arizona*, 384 U.S. 436 (1966).

at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex. App.—Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

**Illegal Detention**

Babalola argues that he was illegally detained and that any statements made during the detention are inadmissible.

When a search warrant is issued for a particular residence, a judicial officer has made an objective determination that there is probable cause to believe someone in the residence is committing a crime. *Michigan v. Summers*, 452 U.S. 692, 703-4 (1981). Therefore, when the warrant is executed, a person who is an occupant of the premises may be detained for the duration of the search. *Id*.

Babalola was named in the search warrant as a "suspected party." Although Babalola was not on the premises at the time he was detained, the record shows that he was returning to his residence. The officers detained him in the entryway to the apartment complex, approximately 200 feet from his apartment. Babalola was detained

to reduce the risk involved in executing the search warrant. *See Michigan v. Summers*, 452 U.S. at 702. We find that the officers were justified in detaining Babalola.[3]

Babalola also contends that his statements to Officer Fallwell were the product of an illegal arrest. In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010), *cert. den'd*, 131 S.Ct. 905, 178 L.Ed.2d 760 (2011); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Bartlett v. State*, 249 S.W.3d 658, 668 (Tex.App.—Austin 2008, pet. ref'd). The restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Stansbury v. California*, 511.U.S. 318 (1994). An officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave. *Estrada*, 313 S.W.3d at 294.

---

[3] We do not hold that officers may detain a suspect named in a search warrant during the execution of the search warrant when that suspect is at a remote location.

Officer Fallwell repeatedly told Babalola that he was not under arrest. Babalola was not placed in handcuffs or restrained. Babalola statements were not the result of custodial interrogation. We overrule Babalola's third issue on appeal.

**Request for Counsel**

Babalola argues that while talking to Officer Fallwell he requested an attorney and that the trial court should have suppressed all statements made after his request. After speaking with Babalola about the incident, Officer Fallwell read Babalola the *Miranda* warnings. Babalola stated "so just let me talk to a lawyer or whatever and just let me go to jail … ."

When an individual is in custody and requests an attorney, the individual cannot be further interrogated by the police until counsel has been provided for him or unless the suspect reinitiates the interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Brossette v. State*, 99 S.W.3d 277, 282 (Tex.App.-Texarkana 2003, pet. dism'd). As previously stated, Babalola was not in custody when he made the statements to Officer Fallwell. Police are not required to terminate an interrogation when an individual who is not in custody requests an attorney. *Brossette v. State*, 99 S.W.3d at 282. We overrule Babalola's fourth issue on appeal.

**Post Arrest Statement**

In his fifth issue on appeal, Babalola states that the trial court erred in "overruling his post arrest statement to Det. Fallwell that occurred while [he] was in custody and after he requested an attorney." In his brief, Babalola has a Statement of Facts in Support of issues Three, Four, and Five. There is an Argument and Authorities

section for both issue three and four.  Babalola does not include any argument or authorities in support of his fifth issue.  Citation to authorities is required in order to properly present an issue to this Court.  TEX. R. APP. P. 38.1.  Babalola does not present anything for review on this issue.  TEX. R. APP. P. 38.1; *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008).

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed April 13, 2011
Do not publish
[CR 25]